STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1386


J. D. JACOBS, ET AL.

VERSUS

CITY OF MARKSVILLE, ET AL.


**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2004-6411-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

AFFIRMED.


Randall B. Keiser
Keiser Law Firm, P.L.C.
Post Office Box 12358
Alexandria, LA  71315
(318) 443-6168
COUNSEL FOR DEFENDANTS/APPELLANTS:
    City of Marksville
    Hubert Lambert

Jerold Edward Knoll, Jr.
The Knoll Law Firm, LLC
Post Office Box 426
Marksville, LA  71351
(318) 253-6200
COUNSEL FOR PLAINTIFFS/APPELLEES:
    J. D. Jacobs
    Marcus Conway
    Brandon Berry

AMY, Judge.

The plaintiffs allege injury as the result of an automobile accident occurring after the vehicle in which they were traveling was struck by a City of Marksville utility truck. After liability was resolved in favor of the plaintiffs by partial summary judgment, the questions of causation of injuries and damages proceeded to a bench trial. The trial court initially denied an exception of res judicata and ultimately awarded medical expenses and general damages to each of the plaintiffs. The defendants appeal. For the following reasons, we affirm.

**Factual and Procedural Background**

The plaintiffs, J.D. Jacobs, Marcus Conway, and Brandon Berry, filed suit for personal injuries following a June 5, 2003 automobile accident in Marksville, Louisiana. The plaintiffs alleged that the Mazda Protege in which they were traveling was struck by a utility truck driven by City of Marksville employee, Hubert Lambert. The City of Marksville and Mr. Lambert were named as defendants. Following the accident, the plaintiffs were transported to Avoyelles Hospital where they were evaluated and treated prior to their release. All three plaintiffs began treatment with Dr. Darron McCann.

A partial summary judgment was entered in November 2005 "finding the defendants to be solely at fault in causing the instant accident." The remaining issues of causation of injuries and damages proceeded to a bench trial. During trial, the trial court denied an exception of res judicata in which the defendants asserted that Mr. Berry's settlement of a separate, September 2004 automobile accident precluded his recovery of damages associated with the instant accident. The trial court ultimately awarded Mr. Jacobs $5,583.58 in medical special damages and $45,000.00 in general

damages. As Mr. Conway died from unrelated causes during the course of litigation[1], his father, as substitute plaintiff, was awarded $5,238.67 in medical special damages and $35,000.00 in general damages. Mr. Conway's gross award was reduced by $10,000.00 due to a "No Pay No Play Deduction."[2] Finally, the trial court awarded Mr. Berry $43,197.95 in past medical special damages, $3,500.00 in future medical special damages, and $225,000.00 in general damages.

The defendants appeal and, in their first assignment of error, question the trial court's denial of exception of res judicata. They also question the quantum in the general damages awarded to each of the plaintiffs.

**Discussion**

*Exception of Res Judicata*

The automobile accident at issue occurred in June 2003. In September 2003, Mr. Berry was involved in another automobile accident. Dr. McCann treated Mr. Berry for alleged injuries from both accidents. In their exception of res judicata, the defendants asserted that expenses associated with Dr. McCann's treatment and associated costs for prescribed medical care were forwarded to the insurer in the September 2003 accident and, after settlement of that claim, any claim that Mr. Berry had against them was barred.

---

[1] The record indicates that Marcus Conway died on March 22, 2005.

[2] *See* La.R.S. 32:866(A)(1), which provides that:

There shall be no recovery for the first ten thousand dollars of bodily injury and no recovery for the first ten thousand dollars of property damage based on any cause or right of action arising out of a motor vehicle accident, for such injury or damages occasioned by an owner or operator of a motor vehicle involved in such accident who fails to own or maintain compulsory motor vehicle liability security.

Specifically, the defendants point to the emphasized language in the "Final Release and Settlement of Claim" stemming from the second accident, wherein Mr. Berry, in exchange for a $9,000.00 payment, agreed to:

> [R]elease, acquit and forever discharge the said payor(s), their agents and employees, officers, directors, and *all other persons*, firms or corporations *who are or might be liable, from any and all actions*, causes of actions, *claims*, demands, damages, costs, loss of services, loss of consortium, expenses, punitive and/or exemplary damages, attorney fees, statutory penalties, interest and compensation on account of or in any way growing out of any and all known and unknown death or deaths, personal injuries and property damage, resulting from an accident that occurred
>
> on or about the 18 day of September 2004 by reason of auto accident
>
> *including any other claims that I/we may have which arose at the time of or prior to such accident*, or arising out of the manner that the company handled, settled or defended the releasor's claims or resulting from any obligation arising out of any penalty statute, and do hereby for myself (or ourselves) heirs, executors, administrators, successor and assigns, covenant with the said payor(s), their agents and employees, officers, directors and all other persons, firms or corporations which are or may be liable to indemnify and save them harmless from all claims and demands, costs, loss of services, loss of consortium, expenses and compensation on account of or in any way growing out of said accident or its results, known and unknown, or prior claims, both to persons and property.

(Emphasis added.) Referencing this language, the defendants contend that, "[b]ecause those injuries were represented to Farm Bureau[3] as resulting from the September 2003 accident, and because Mr. Berry released Farm Bureau and 'all other persons' from 'any claims' to recover for those injuries, Appellants submit that Mr. Berry's claims against them are barred by *res judicata*." In particular, the defendants contend that, insofar as Mr. Berry complained of knee and back pain from both accidents, his claim was released.

---

[3] Farm Bureau was the insurer of the vehicle involved in the September 2003 accident.

3

Louisiana Revised Statutes 13:4231 provides as follows with regard to the defense of res judicata:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1)     If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2)     If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3)     A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

This doctrine, applicable to a final judgment on the merits, also applies in instances where the parties have entered into a transaction or settlement of a disputed compromised matter. *See Ortego v. State, DOTD*, 96-1322 (La. 2/25/97), 689 So.2d 1358.

Examining the settlement and release urged by the defendants, it is apparent that the trial court correctly denied the exception of res judicata. Louisiana Revised Statutes 13:4231 indicates that a final judgment is conclusive "between the same parties . . . ." The settlement document the defendants contend is conclusive involved Mr. Berry, but the opposing party was Farm Bureau and its insured. Neither of these parties appear to have any connection with the present accident or claim. Conversely, the present defendants were not involved in the claim arising from the September 2003 accident. Similarly, La.R.S. 13:4231 indicates that a final judgment

4

extinguishes "all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation [.]" Obviously the claims from the June 2003 accident and those from the September 2003 accident were distinct occurrences.

This assignment lacks merit.

*Double Recovery*

In a related argument, the defendants contend that the $9,000.00 received by Mr. Berry for his settlement of the September 2003 accident included payment of medical expenses submitted with the claim and that he should not be able to receive a "double reimbursement" of these fees in the present matter. Again, the defendants point to a number of dates on which Mr. Berry was seen by Dr. McCann and on which the plaintiffs contend that he was seen for injuries from both accidents.

This argument was specifically rejected by the trial court. Based on this record, the trial court's award of medical special damages to Mr. Berry does not require correction on appeal. While Dr. McCann treated Mr. Berry for injuries arising from both accidents, Dr. McCann testified as to the distinction made between the two accidents. Reference to Dr. McCann's notes reveals, in fact, segments of the exam attributable to accident "#1" and those attributable to accident "#2", with his examination of Mr. Berry's various complaints recorded accordingly. Furthermore, as suggested by the plaintiffs, Mr. Berry's claim against Farm Bureau was a general compromise to end the litigation from the September 2003 accident. While all claims were released, no portion of the settlement was attributed to any specific outstanding medical expenses.

This assignment lacks merit.

*General Damages*

Next, the defendants question the quantum of general damages awarded to each of the plaintiffs. In reviewing an award of general damages, an appellate court does not determine what it considers to be an appropriate award, but instead reviews the trier of fact's exercise of discretion in assessing damages. The adequacy of the award is considered in light of the facts or circumstances presented by a particular case. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993). Moreover, the discretion accorded the trier of fact has been described as "'great,' and even vast, so that an appellate court should rarely disturb an award of general damages." *Id.* at 1261. We turn to consideration of the individual awards.

J.D. Jacobs

The defendants assert that the trial court's award of $45,000.00 to Mr. Jacobs was an abuse of discretion as the injury was primarily soft tissue in nature and required no procedures. Rather, Mr. Jacobs was treated with medications and attended only one physical therapy session.

Mr. Jacobs testified that he was seated in the back seat of the Mazda Protege at the time of the automobile accident and that, after the vehicle was struck on the rear quarter panel, he came to rest in the "lap" of Mr. Berry who was seated in the front portion of the car. He explained that he was "dizzy" and "woozy" from the impact. Mr. Jacobs was transported to the hospital from the scene. He testified that his complaints were as follows at that time: "My shoulder was swollen and I had some glass had come besides my face like by my ear. A little light swelling on my left side of my head. My left shoulder. That was basically it there."

6

On June 6, 2003, Mr. Jacobs began treating with Dr. McCann, who testified that, on this initial visit, physical examination was "remarkable for the neck was tender with spasm on the left posterior; back was tender; the left shoulder, tender with palpation and manipulation; had positive edema and bruising on the left shoulder." Dr. McCann stated that, in subsequent visits, Mr. Jacobs continued to complain of headaches, neck pain, shoulder pain, and sharp lower back pain. On cross-examination by defense counsel, Dr. McCann explained that, during the period of treatment, he found spasm in the neck on five occasions, the back on one occasion, and in the shoulder on the initial examination. Dr. McCann reported that, on his final examination of Mr. Jacobs on July 21, 2004, Mr. Jacobs continued to complain of pain, including headaches. At trial, Dr. McCann testified that he had examined Mr. Jacobs earlier in the day and that he reported suffering from headaches two to three times a day and that some decreased vision was involved. He also reported experiencing neck, left shoulder, and back pain several times per week. Dr. McCann related Mr. Jacobs' complaints to the accident.

In light of the duration of Mr. Jacobs' varied, long-term complaints, Dr. McCann's description of the soft tissue strains as "chronic," and the observation of objective symptoms, we find no abuse of discretion in the trial court's award of $45,000.00 to Mr. Jacobs.

Marcus Conway

The defendants next turn to the $35,000.00 in general damages awarded to Marcus Conway. As with Mr. Jacobs, the defendants contend that Mr. Conway's injuries were soft tissue in nature and required only one steroid injection and less than one month of physical therapy.

Dr. McCann's deposition reflects that when he first examined Mr. Conway on June 6, 2003, Mr. Conway reported that he hit his head on windshield in the accident and that he had "some loss of consciousness, immediate headaches, no nausea and vomiting, some blurry vision, confused initially." Mr. Conway advised him that he later developed "bilateral arm and leg pain and lower back pain and neck pain." Dr. McCann stated that he observed a five to seven centimeter "knot" on the left side of Mr. Conway's head and found his right cheek to be tender with an abrasion. Dr. McCann found the lower back tender with a spasm, which he treated with a Cortisone injection. Pain medication was prescribed.

In subsequent visits, Mr. Conway continued to complain of headaches, neck, and back pain. During the course of treatment, which lasted from June 2003 to April 28, 2004, Dr. McCann reported that he identified three instances of neck spasm, one instance of back spasm, and one instance of shoulder spasm. When asked about his diagnosis of Mr. Conway's condition, Dr. McCann explained that he appeared to have "a head concussion, post-concussion headaches, neck strain and back strain." Dr. McCann related Mr. Conway's injuries to the accident.

Mr. Conway suffered a contusion and a facial abrasion in the accident. Afterwards, he reported ten months of headaches, at times occurring daily, and repeatedly reported symptoms related to the diagnosis of chronic, neck and back strain. Dr. McCann explained that he found objective findings related to this type of complaint. Given this support, we find no abuse of discretion in the trial court's award of $35,000.00 in general damages to Mr. Conway.

8

Brandon Berry

Finally, the defendants question the $225,000.00 general damages award made to Mr. Berry and make reference to other cases in which similar awards were made to plaintiffs who required more intensive treatment or who were given a greater impairment ratings.

In *Youn*, 623 So.2d at 1260, the supreme court referenced its prior jurisprudence indicating it disapproves of use of prior reported awards for similar injuries in the initial determination of whether a trier of fact has abused its discretion "in the awards to a particular plaintiff under the facts and circumstances peculiar to the particular case." Rather, the *initial inquiry* is whether the award, given the particular facts and circumstances of both the injury and the plaintiff, is a clear abuse of the trier of fact's discretion. *Id.* Only after that initial inquiry reveals an abuse of discretion, does the reviewing court then turn to consideration of prior awards to determine the highest or lowest award that was reasonably within the trier of fact's discretion. *Id.*

In consideration of this initial inquiry, we note that the record reveals that Mr. Berry testified that he was sitting in the front passenger seat of the Mazda Protege and that, upon impact, his knees "jammed up against the dashboard" and that he heard a "pop" in his right knee. Dr. McCann explained that he first examined Mr. Berry on June 10, 2003. At that time, Mr. Berry complained of lower back pain and pain in both knees. Dr. McCann treated Mr. Berry with a Cortisone injection in the hip to "reduce inflammation in the back and the knees." He also prescribed a pain reliever and a muscle relaxer. In subsequent visits, Mr. Berry's complaints of back pain

lessened, but his complaints of right knee pain worsened. He ultimately began reporting popping and locking in the knee.

In February 2004, Mr. Berry began treating with Dr. Kenneth Addatto, an orthopedic surgeon in New Orleans, who administered a series of injections into the right knee and prescribed physical therapy. After the complaints continued, Dr. Addatto performed surgery on Mr. Berry's right knee in March 2005. The surgery revealed that Mr. Berry had a swollen "joint lining" and a "tight" plica fold that Dr. Addatto released during surgery. In an April post-operative visit, Dr. Addatto recommended physical therapy and, by May, advised that Mr. Berry could return to light work.

However, Mr. Berry testified that his knee complaints worsened after the surgery. Thereafter, and due to the disruption of Dr. Addatto's practice following Hurricane Katrina, Mr. Berry began treating with Dr. John Cobb, an orthopedic surgeon in Lafayette, in October 2005. Dr. Cobb testified that he performed arthroscopic surgery on Mr. Berry's knee in March 2006 and that the surgery revealed "tilting and subluxation of the patella with contracture of the lateral retinaculum." For the surgery, Dr. Cobb further explained that "the patient actually receives a general anaesthetic[.]" Prior to his June 2006 deposition, Dr. Cobb's final examination of Mr. Berry was in May 2006. He felt that Mr. Berry's prognosis was "good," but probably prolonged. Dr. Cobb expected Mr. Berry's recovery to be one year from the date of surgery and noted that, if pain continued, it would have to be managed.

Mr. Berry reported at the June 2006 trial, that his complaints remained the same in that he was experiencing "swelling, popping, aching, stiffness, everything."

He stated that he could no longer participate in sports and could no longer walk for long distances or perform any squatting or bending. He ascends and descends stairs with difficulty. Mr. Berry testified that his knee still "pops."

After review of the record, we find that the trial court's general damages award was within its much discretion. It was aware that Mr. Berry had undergone two surgeries, physical therapy, and a number of injections. The trial court was also free to accept Mr. Berry's testimony that, three years after the accident, he continued to experience pain in the knee and that his activities had been curtailed.

As we find no abuse of discretion in this initial inquiry in review of the general damages award, we do not turn to consideration of other cases involving awards for similar injuries.

**DECREE**

For the foregoing reasons, the judgment rendered by the trial court is affirmed. All costs of this proceeding are assessed equally to the defendants, the City of Marksville and Hubert Lambert, in the amount of $800.00.

**AFFIRMED.**