STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-1046


RAYMOND COLE, ET AL.

VERSUS

ALLSTATE INSURANCE COMPANY, ET AL.


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2005-1387
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Oswald A. Decuir, Michael G. Sullivan, Glenn B. Gremillion, J. David Painter, and James T. Genovese, Judges.

Sullivan, J., dissents and assigns written reasons.

**AFFIRMED AS AMENDED.**

J. Craig Jones
Jones & Hill, LLC
131 Highway 165 South
Oakdale, Louisiana  71463
(318) 335-1333
Counsel for Plaintiffs/Appellants:
     Raymond Cole, Lisa Cole, and Jerry Cole


Craig R. Hill
Jones & Hill, LLC
Post Office Box 1260
Oberlin, Louisiana  70655
(337) 639-2127
Counsel for Plaintiffs/Appellants:
     Raymond Cole, Lisa Cole, and Jerry Cole

Sean P. Rabalais
Joseph H. Garbarino
Royale L. Colbert, Jr.
Attorneys at Law
400 East Kaliste Saloom Road, Suite 8300
Lafayette, Louisiana  70508
(337) 291-1743
Counsel for Defendants/Appellees:
    Allstate Insurance Company, Ronald K. Floyd, and
    Acadiana Builders, Inc.

**GENOVESE, Judge.**

Plaintiffs, Lisa Cole, Raymond Cole, and Jerry Cole, appeal the damage and expert witness fee awards in a judgment rendered in their favor pursuant to a bench trial. For the following reasons, we find the trial court's awards for special damages to be manifestly erroneous and that the trial court clearly abused its discretion in its award of general damages and the setting of the expert witness fee in this matter. Therefore, we increase the amounts of said awards and affirm the judgment, as amended.

## FACTS AND PROCEDURAL HISTORY

This lawsuit arises out of an automobile accident that occurred on October 1, 2004, on East Kaliste Saloom Road in Lafayette, Louisiana. Plaintiffs were riding in a Honda Civic that was broadsided by a Ford F-150 pickup truck driven by the Defendant, Ronald Floyd.

Plaintiffs filed suit against Mr. Floyd, his employer, Acadiana Builders, Inc., and Allstate Insurance Company, the automobile liability insurer of the company truck that Mr. Floyd was driving at the time of the accident. A bench trial took place on December 4 and 5, 2006. Written Reasons For Ruling were issued on January 8, 2007. The trial court found that Plaintiffs had proven by a preponderance of the evidence that Mr. Floyd's negligence was the sole cause of the accident and made the following awards:

|  | Special Damages | General Damages |
|---|---|---|
| Raymond Cole | $ 2,000.00 | $ 3,500.00 |
| Lisa Cole | $ 3,500.00 | $ 10,000.00 |
| Jerry Cole | $ 2,000.00 | $ 3,500.00 |

1

Plaintiffs' treating physician and the only expert witness at trial, Dr. Elemer Raffai, was awarded an expert witness fee of $500.00, and Mr. Floyd and Allstate were cast with all costs of court. Judgment was signed on March 1, 2007, in accordance with the reasons rendered, in favor of each individual Plaintiff and against Mr. Floyd and Allstate, in solido, in the amounts listed above.

Plaintiffs appeal.

## ASSIGNMENTS OF ERROR

The errors assigned by Plaintiffs in this appeal are (1) inadequacy of the special damage awards; (2) failure to find causation and award damages for Jerry Cole's alleged knee injury; (3) inadequacy of the general damage awards; and (4) inadequacy of the expert's witness fee.

## LAW AND DISCUSSION

The standard of appellate review of a trial court's factual findings is well settled and has long been established in this state. A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Our supreme court set forth a two-part test for the reversal of a factfinder's determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). *Earls v. McDowell*, 07-17 (La.App. 5 Cir. 5/15/07), 960 So.2d 242, citing *Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La.1993). On appeal, the issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Id.* Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Earls, supra,* citing, *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989).

An appellate court cannot shirk its duty of appellate review of fact by simply deferring to a trial court's factual determinations because its reasons for judgment are couched in terms of a credibility call. *Earls, supra,* citing, *Rogers v. City of Baton Rouge*, 04-1001 (La.App. 1st Cir.6/29/05), 916 So.2d 1099, 1104, *writ denied*, 05-2022 (La.2/3/06), 922 So.2d 1187. This Court has a constitutional responsibility to review

2

the entire record and to determine whether, as a whole, it supports the judgment rendered by the trial court. *Earls, supra,* citing, LSA-Const. Art. 5, section 10(B); *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La.2/20/95), 650 So.2d 742.

Proof by a preponderance of the evidence is defined as taking the evidence as a whole, the fact to be proved is more probably than not. *Earls, supra,* citing, *Fuller v. Wal-Mart Stores, Inc.*, 519 So.2d 366, (La.App. 2nd Cir.1988). Uncontroverted evidence should be taken as true to establish a fact for which it is offered absent any circumstances in the record casting suspicion as to the reliability of this evidence and sound reasons for its rejection. *Id.*

*Boxie v. Smith-Ruffin*, 07-264, pp. 3-4 (La.App. 5 Cir. 2/6/08), 979 So.2d 539, 545.

Plaintiffs contend that the trial court ignored Plaintiffs' uncontroverted testimony which was corroborated by the testimony of their expert witness and treating physician, Dr. Elemer Raffai, an orthopedic surgeon. The only witness called to testify on behalf of the defense was the Defendant, Ronald Floyd, whose testimony pertained only to causation. Defendants presented no contradictory medical testimony or evidence; there was no independent medical examination; and, Dr. Raffai was accepted by the Defendants as an expert in the field of orthopedic surgery.

***Special Damage Awards***

At trial, Raymond Cole sought $16,778.27 in medical expenses, Lisa Cole sought $13,065.86 in medical expenses, and Jerry Cole sought $17,042.48 in medical expenses. However, the trial court awarded only $2,000.00 to Raymond Cole, $3,500.00 to Lisa Cole, and $2,000.00 to Jerry Cole in medical expenses. Plaintiffs contend that these special damage awards are abusively low and seek the full amount of their past medical expenses.

[W]hen a plaintiff alleges that medical expenses were incurred "and that allegation is supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of that item in the judgment." [*Esté v. State Farm Ins. Co.*, 96-99, p. 10 (La.App. 3 Cir.

3

7/10/96), 676 So.2d 850, 857.]  A factfinder errs if it fails to award the full amount of medical expenses incurred as a result of the accident and proven by a preponderance of the evidence.  *Revel v. Snow*, 95-462 (La.App. 3 Cir. 11/2/95), 664 So.2d 655, *writ denied*, 95-2820 (La.2/2/96), 666 So.2d 1084.

*Simon v. Lacoste*, 05-550, p. 3 (La.App. 3 Cir. 12/30/05), 918 So.2d 1102, 1104-05.

We find that the evidence in the record establishes and demonstrates that Lisa Cole, Raymond Cole, and Jerry Cole did, in fact, receive injuries and that each had valid complaints referable to injuries received in the accident made the subject of this lawsuit.[1]  This evidence is supported by the testimony of Plaintiffs' treating physician, Dr. Elemer Raffai, and uncontroverted by Defendants.  Our examination of the facts and medical testimony in the record clearly and unequivocally indicates that the trial court's special damage awards were manifestly erroneous and did not adequately and properly compensate Plaintiffs for their medical expenses in accordance with law. Based upon the uncontroverted medical evidence in the record, we award Raymond Cole his duly incurred medical expenses of $16,778.27, Lisa Cole her duly incurred medical expenses of $13,065.86, and Jerry Cole his duly incurred medical expenses of $17,042.48.

***General Damage Awards***

In *Andrus v. State Farm Mutual Automobile Insurance Co.*, 95-0801, p. 8 (La. 3/22/96), 670 So.2d 1206, 1210 (citations omitted), the supreme court stated:

> In appellate review of general damage awards, the court must accord much discretion to the trial court judge or jury.  The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court.  Only if the reviewing court determines that the trial court has abused its "much discretion" may it refer to prior awards in similar cases and then only to determine the highest or lowest point of an award within that discretion.

---

[1]The issues of causation and connectivity are not before this court on appeal.

4

Because discretion vested in the trial court is "great," and even vast, an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, *in either direction*, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

The evidence shows that both Raymond and Lisa Cole[2] sought treatment on October 2, 2004, the day after the accident, at the Oakdale Community Hospital emergency department. Lisa Cole (Lisa) presented with complaints of pain in her right shoulder and lower back. X-rays of Lisa's right shoulder were taken and found to be normal. She was diagnosed with a contusion of the right shoulder and lumbar sprain. Raymond Cole (Raymond) presented with complaints of pain in his neck and left knee. X-rays of Raymond's cervical spine and left knee were taken and found to be normal. Both Lisa and Raymond were released with prescriptions for pain medication and with instructions to follow up with their family doctor.

Raymond began treatment with Dr. Elemer Raffai, an orthopedist, on October 8, 2004. Dr. Raffai testified that his initial examination revealed muscle spasms in Raymond's cervical and lumbar regions. Dr. Raffai diagnosed Raymond with "[w]hiplash injury, sprain of the neck, sprain of the lower back, sprain of the left knee, post motor vehicle accident." According to Dr. Raffai, Raymond continually presented with muscle spasms in the cervical and lumbar areas, as well as with knee pain and radiculopathy.[3] Dr. Raffai testified that he considered Raymond's injuries to be chronic and that, in his opinion, Raymond would continue to have these symptoms into the future.

---

[2]Raymond and Lisa Cole are husband and wife.

[3]Radiculopathy, as defined by Dr. Raffai, is "an irritation or pinching of the nerve roots in the lower lumbar spine that causes shocking sensations down one or both extremities."

The record establishes that Raymond was treated by Dr. Raffai from October 8, 2004 through November 3, 2006. As of the date of trial in December of 2006, Dr. Raffai had treated Raymond with a regimen of cortisone injections, anti-inflammatory medications, and pain medications through the course of twenty-three visits.

Raymond testified that he was unable to accept the offshore job for which he was in Lafayette to attend a pre-employment physical on the day of the accident made the subject of this lawsuit. According to Raymond, he could not find work for approximately three months after the accident; however, he did eventually find work with a construction company where he performed light duty work for almost one year.

Lisa began treatment with Dr. Raffai on October 12, 2004 for pain in her right shoulder, lower back, and neck. In his initial examination of Lisa, Dr. Raffai noted muscle spasms in Lisa's neck at the C5-6 level, muscle spasms in Lisa's back at the L5-S1 and L4-5 levels, positive straight leg raise tests, and radiculopathy into both legs. Dr. Raffai diagnosed Lisa with "[w]hiplash injury, sprain of the neck, lower back, bursitis, [and] rotator cuff tendinitis of the right shoulder." Two weeks after her initial visit, Lisa returned to Dr. Raffai complaining of headaches. Dr. Raffai testified that Lisa's shoulder injury had healed by January of 2006, and her neck injury had healed by November of 2006. However, Dr. Raffai opined that Lisa's lower back injury, though somewhat improved, was chronic and that she would continue to have these symptoms into the future.

The record establishes that Lisa was treated by Dr. Raffai from October 12, 2004 through November 10, 2006. As of the date of trial, Dr. Raffai had treated Lisa with a regimen of cortisone injections, anti-inflammatory medications, and pain medications through the course of twenty-two visits.

6

Lisa testified that at the time of the accident, she was employed at the St. Francis Nursing Home in Kinder, Louisiana. According to Lisa, she missed work the day following the accident due to her injuries; however, she was allowed to perform only light duty work upon her return.

Jerry Cole[4] (Jerry) began treatment with Dr. Raffai on October 8, 2004. According to Dr. Raffai's medical records, Jerry presented with complaints of "severe pain on and off ever since the accident in his neck, low[er] back and right knee." Dr. Raffai diagnosed Jerry with "[w]hiplash injury, sprain of the neck, sprain of the lower back, post-MVA, severe, with radiculopathy in the arms and legs." In February of 2006, Dr. Raffai ordered MRIs of Jerry's right knee, cervical spine, and lumbar spine. According to Dr. Raffai, the MRI of Jerry's cervical spine showed an indentation of the dura sac surrounding the nerve root as it exits Jerry's spine. Further, Dr. Raffai observed on the MRI of Jerry's neck and back that there was a flattening of the dura sac, indicating a mechanical impingement. Dr. Raffai opined that the automobile accident of October 1, 2004 caused the impingement upon Jerry's nerves in his neck; however, he opined that the impingement in Jerry's lower back pre-existed the accident at issue herein.

The MRI of Jerry's right knee also revealed a tear of the posterior horn of the medial meniscus. Dr. Raffai opined that the torn meniscus in Jerry's right knee resulted from the October 1, 2004 accident; however, upon cross-examination, Dr. Raffai conceded that the abnormality of Jerry's gait due to his prosthetic leg "may" have contributed to the tear of the meniscal cartilage in Jerry's right knee.

Based upon our review of the uncontroverted facts and medical evidence in the

---

[4]Jerry Cole's left leg had been amputated below the knee approximately fourteen years before the subject accident.

7

record, we find that the trial court abused its discretion by awarding inadequate general damages to each of the Plaintiffs. Therefore, we refer to similar cases to determine reasonable awards for the injuries suffered by each Raymond Cole, Lisa Cole, and Jerry Cole.

In *Jacobs v. City of Marksville*, 06-1386 (La.App. 3 Cir. 3/7/07), 953 So.2d 139, *writ denied*, 07-1093 (La. 9/14/07), 963 So.2d 999, the plaintiffs sustained injuries in an automobile accident. The trial court awarded one plaintiff $45,000.00 in general damages and $5,583.00 in special damages for chronic neck and back strain, shoulder strain, and post-traumatic headaches. The trial court awarded another plaintiff $35,000.00 in general damages and $5,238.00 in special damages for injuries including a concussion, abrasions, headaches, and low back and neck pain for which he received a cortisone injection. These damage awards were affirmed by this court.

In *Henry v. Wal-Mart Stores, Inc.*, 99-1630 (La.App. 3 Cir. 3/1/00), 758 So.2d 327, *writ denied*, 00-929 (La.App. 3 Cir. 5/26/00), 762 So.2d 1107, the plaintiff suffered from shoulder, lower back, and leg pain as a result of a slip and fall accident. The plaintiff saw an orthopedic surgeon approximately five times over a course of ten months for these complaints, and took various medications for nerve irritation and underlying arthritis. The trial court awarded the plaintiff $22,000.00 in general damages and $721.00 in past medicals, which was affirmed by the court of appeal.

We find the injuries suffered in *Jacobs* and *Henry* are similar and comparable to those suffered by each of the Plaintiffs in the case at bar. After reviewing prior awards in these similar cases, we find that the general damage awards of $3,500.00 to Raymond Cole, $10,000.00 to Lisa Cole, and $3,500.00 to Jerry Cole are below that which a reasonable trier of fact could assess in such a case. The trial court's

8

judgment reflected an affirmative finding that Raymond, Lisa, and Jerry were injured as a result of the side-impact collision. However, it appears that the trial court concluded that though each of the Plaintiffs did, in fact, suffer soft-tissue injuries, the trial court also felt that the Plaintiffs exaggerated their symptoms. The uncontroverted medical evidence does not reasonably support such a conclusion. Rather, the evidence indicates that each of the Plaintiffs suffered cervical injuries, neck pain, lower back pain, and chronic pain with residual complaints through the date of trial. Considering our review of prior awards for similar injuries and noting the aforementioned medical assessments that are in evidence, we amend the trial court's general damage awards of $3,500.00 to Raymond Cole, $10,000.00 to Lisa Cole, and $3,500.00 to Jerry Cole and raise these amounts to the lowest reasonable amounts of $25,000.00 to Raymond Cole, $30,000.00 to Lisa Cole, and $25,000.00 to Jerry Cole.

***Jerry Cole's Knee Injury***

When Jerry Cole initially presented to Dr. Raffai on October 8, 2004, he did not complain of any knee pain. Due to his complaints of pain in both knees at his October 22, 2004 visit, X-rays were taken of both knees, the results of which showed good alignment, slight arthritis, and no fractures. Dr. Raffai testified that Jerry's prosthetic leg was outdated, worn, and too short, causing him to limp. As a result thereby, Dr. Raffai wrote Jerry a prescription for a new prosthetic leg. An MRI in February of 2006 revealed torn cartilage in Jerry's right knee, which Dr. Raffai attributed to the subject accident, and which he opined made Jerry a candidate for arthroscopic knee surgery. Upon questioning by Defendants, however, Dr. Raffai could not rule out the potentiality that Jerry's short prosthetic leg could have

9

contributed to the torn cartilage in his right knee.

Jerry testified that he suffered from arthritis and that he walked with a limp before the subject accident. The trial court was of the opinion that the results of the MRI of his right knee were unremarkable. Given the fact that Jerry did not get an MRI of his right knee until a year and a half after the accident, the potentiality that the condition of Jerry's right knee could have been exacerbated by the fact that he had an amputation from the knee down on the opposite leg, and an ill-fitting prosthetic leg, we find no abuse of discretion in the trial court's conclusion that Jerry failed to prove that his right knee injury was caused by the subject accident.

### *Expert's Witness Fee*

At the insistence of the trial court, Dr. Raffai had to appear for both of the two days of trial. He testified that his charge for appearing at trial was $2,400.00. Because Dr. Raffai was not board certified in the United States, the trial court, not counsel, questioned him at length regarding his qualifications. Ultimately, the trial court did accept Dr. Raffai as an expert in orthopedic surgery after being offered proof that he was board certified by the Royal College of Surgeons of Canada and that his certification was accepted by the Medical Board of Louisiana. It is noteworthy that the record indicates that it was the trial court, not the Defendants, who challenged Dr. Raffai's qualifications as an expert in the field of orthopedic surgery. It was the trial court's own error and its own order that required Dr. Raffai to have to "hang around" until the end of the trial.

Given the length of time that Dr. Raffai was required to be in court, we conclude that the trial court abused its discretion in awarding him an expert witness fee of only $500.00. We increase Dr. Raffai's expert witness fee to $1,500.00.

## CONCLUSION

For the foregoing reasons, we amend the judgment of the trial court to reflect the following awards of damages: $16,778.27 in special damages and $25,000.00 in general damages for Raymond Cole; $13,065.86 in special damages and $30,000.00 in general damages for Lisa Cole; and $17,042.48 in special damages and $25,000.00 in general damages for Jerry Cole. We also amend the trial court's judgment to award to Dr. Elemer Raffai an expert witness fee of $1,500.00. Costs of this appeal are assessed against Defendants/Appellees, Ronald Floyd and Allstate Insurance Company.

**AFFIRMED AS AMENDED.**

**RAYMOND COLE, ET AL.**

**VERSUS**

**ALLSTATE INSURANCE COMPANY, ET AL.**

SULLIVAN, J., dissenting.

I respectfully disagree with the majority in this case. I would affirm the trial court's judgment regarding the amount of general and special damages awarded to each of the three plaintiffs, having found no manifest error in those awards. I would, however, amend the judgment to increase the expert fee awarded to Dr. Elemer Raffai to $1,000.00, having concluded that the trial court abused its discretion in awarding a lesser amount for his two-day trial appearance.