# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-291


**NOLAN METOYER**

**VERSUS**

**STATE OF LOUISIANA, DEPARTMENT**

**OF AGRICULTURE**


**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C-91677 B
HONORABLE LALA B. SYLVESTER, DISTRICT JUDGE

**********

## D. KENT SAVOIE
## JUDGE

**********

## ON REHEARING

**********


Court composed of D. Kent Savoie, Candyce G. Perret, and Ledricka J. Thierry, Judges.


**AFFIRMED.**

**Liz Murrill**
**Attorney General**
**State of Louisiana**
**Jeannie C. Prudhomme**
**Assistant Attorney General**
**Louisiana Department of Justice**
**Litigation Division**
**556 Jefferson Street, 4th Floor**
**Lafayette, Louisiana 70501**
**(337) 262-1700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **State of Louisiana through the Board of Supervisors of the Louisiana**
   **State University and Agricultural and Mechanical College**

**David A. Johnson**
**Assistant Attorney General**
**State of Louisiana**
**Louisiana Department of Justice**
**Litigation Division**
**900 Murray Street, Suite B-100B**
**Alexandria, Louisiana 71301**
**(318) 487-5944**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **State of Louisiana through the Board of Supervisors of the Louisiana**
   **State University and Agricultural and Mechanical College**

**Edwin Dunahoe**
**Dunahoe Law Firm**
**402 Second Street**
**Natchitoches, Louisiana 71457**
**(318) 352-1999**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
   **Nolan Metoyer**

**David Thomas Butler, Jr.**
**Funderburk & Butler**
**1111 South Foster Drive, Suite G**
**Baton Rouge, Louisiana 70806**
**(225) 924-1000**
**COUNSEL FOR INTERVENOR/APPELLEE:**
   **LUBA Casualty Ins. Co.**

**SAVOIE, Judge.**

## ON REHEARING

Defendant, State of Louisiana through the Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College, filed a motion for rehearing, asking this court to reconsider our previous ruling on general damages in light of the Louisiana Supreme Court's decision in *Pete v. Boland Marine & Manufacturing Co., LLC*, 23-170 (La. 10/20/23), 379 So.3d 636. The motion for rehearing was granted. For the following reasons, we affirm our previous ruling.

## DISCUSSION

Defendant argues that this court did not review prior damage awards when affirming the trial court's award for general damages, citing *Pete v. Boland Marine & Manufacturing Co., LLC*, 23-170 (La. 10/20/23), 379 So.3d 636. The longstanding jurisprudential rule provided that a review of prior damage awards was only proper once there is a determination of an abuse of discretion. *Bouquet v. Wal-Mart Stores*, Inc., 08-309 (La. 4/4/08), 979 So.2d 456. However, in *Pete*, 379 So.3d at 639, the Louisiana Supreme Court stated:

> We have carefully considered whether it remains a sound practice to allow consideration of prior awards only after finding an "abuse of discretion," or whether those awards are a relevant factor to be considered in determining whether there has been an abuse of discretion at the outset. There are no specific parameters by which an "abuse of discretion" is measured, nor a meaningful definition of this phrase. Such determinations are not subject to mathematical exactitude or scientific precision. Indeed, as this Court has recognized, "[t]he standard for appellate review for abuse of discretion in the award of general damages is difficult to express and is necessarily non-specific."

> The inherently subjective nature of the abuse of discretion standard in the context of reviewing general damage awards compels that some measure of objectivity be incorporated into the determination of an award's reasonableness, so that there is some standard for comparison. We now hold that an appellate court must consider

relevant prior general damage awards as guidance in determining whether a trier of fact's award is an abuse of discretion.

*Id.* (alteration in original) (citations omitted) (footnotes omitted).

The supreme court further explained:

> To be clear, a review of prior awards is not the only factor to be considered in evaluating whether a general damage award is an abuse of discretion; it is a starting point. No two cases will be identical. The review of prior awards will simply serve to illustrate and supply guidance in the determination of damages.

*Id.* at 643.

The *Pete* court established the following standard of review for an award of general damages:

> We do not abandon the two-step analysis for the appellate review of a general damage award but modify the analysis as follows. The question of whether the trier of fact abused its discretion in assessing the amount of damages remains the initial inquiry. However, to evaluate this issue, an appellate court is to include a consideration of prior awards in similar cases, as well as the particular facts and circumstances of the case under review. If an abuse of discretion is found, the court is to then also consider those prior awards to determine "the highest or lowest point which is reasonably within that discretion."

*Id.* at 644 (quoting *Jones v. Market Basket Stores, Inc.*, 22-841, p. 16 (La. 3/17/23), 359 So.3d 452, 464.

Based on the change to the standard of review of general damage awards set forth in the *Pete* decision, we will now revisit the general damages awarded in the present case.

The jury awarded Plaintiff $1,200,000.00 in general damages. This award was reduced to the $500,000.00 statutory cap applied to state subdivisions. *See* La.R.S. 13:5106(B)(1). Defendant contends this amount should be reduced even further to $195,000.00 based on the evidence adduced at trial.

In our prior ruling, we provided the following summary of the evidence:

Plaintiff [Mr. Metoyer] was forty-seven-years old at the time of his injury. He ruptured his patellar tendon, which required surgery, performed by Dr. Justin Duke, to reattach the patellar tendon to the patella. The surgery entailed drilling holes into the kneecap and inserting wires into the holes in order to secure the tendon to the kneecap. Plaintiff was placed in an immobilizing brace for over two months post-surgery. During this time, Plaintiff developed blisters at the surgery site, which required attention from the wound care facilities at Natchitoches Regional Medical Center. Plaintiff was treated three times at the wound care facility, on May 22, 2019, May 30, 2019, and June 6, 2019. This treatment included debridement of the wound.

Once Plaintiff was out of the immobilizing brace, he transitioned to a movable leg brace, which he wore for approximately six weeks. During this time, Plaintiff attended physical therapy sessions, wherein the physical therapist would gradually bend his knee ten degrees each week until he was able to bend his knee at one-hundred twenty degrees. Plaintiff attended these physical therapy sessions three times a week for five weeks.

At an examination on August 21, 2019, Dr. Duke found that Plaintiff had one-hundred thirty degrees flexion with no pain. Plaintiff was released to return to work, with limitations. Plaintiff was also discharged from physical therapy on August 22, 2019.

Plaintiff testified that he continued to have issues; however, he did not see a doctor as a result of these issues until much later. He contends that the COVID pandemic caused him to put off going to the doctor. Dr. Duke confirmed that he stopped seeing patients in his clinic in March 2020. Additionally, in May 2020, Dr. Duke moved his practice. Plaintiff testified that he could not locate Dr. Duke and that he was unable secure other orthopedic follow-up care in Natchitoches. Dr. Duke testified that his office had a lot of issues with people who could not locate him for follow-up care.

Plaintiff eventually located Dr. Duke and scheduled a visit on December 3, 2021. Plaintiff presented with a painful, swollen knee. Dr. Duke ordered x-rays and an MRI of Plaintiff's knee. The tests were performed, but Plaintiff did not return for a follow-up visit. Dr. Duke diagnosed Plaintiff with full thickness cartilage loss on the patella and grade three post-traumatic arthritis. Dr. Duke opined that Plaintiff would continue to have problems with arthritis, as long as he stays active. Dr. Duke testified that arthritis is better tolerated in people who lead sedentary lifestyles. Dr. Duke further testified that Plaintiff's arthritis will worsen over his lifetime, and a future surgery is a possibility.

Plaintiff testified that he had continued pain and swelling, with a limitation on his activities that has progressively gotten worse.

According to Plaintiff, he has continued pain, knee buckling, and problems climbing stairs. He cannot kneel on the knee in question. He also testified that he sometimes walks with a limp. Plaintiff further testified that he was concerned about how active he would be in the future, particularly with any future grandchildren he may have.

Defendant cites several cases in support of its proposition that the general damages award should be reduced. In *Moody v. Cummings*, 09-1233 (La.App. 4 Cir. 4/14/10), 37 So.3d 1054, *writ denied*, 10-1106 (La. 9/3/10), 44 So.3d 686, the plaintiff was involved in a car accident wherein he suffered a knee injury. The appellate court found that the plaintiff suffered a partial tear of the medial collateral ligament and chondromalacia patella in his right knee. The plaintiff had not yet had surgery but would require one in the future. The plaintiff had experienced pain in his knee since the accident. The appellate court affirmed the award of $60,000.00 for the plaintiff's knee injury. Adjusted for inflation as of the August 2022 trial date in the present case, using the U.S. Bureau of Labor Statistics Consumer Price Inflation Calculator,[1] this award was $81,511.59. In our opinion, the injury sustained by the plaintiff in this case is not as significant as the injury and post-operative complications suffered by Mr. Metoyer.

Next, in *Todd v. Delta Queen Steamboat Co.*, 07-1518 (La.App. 4 Cir. 8/6/08), 15 So.3d 107, the plaintiff sustained a knee injury while working aboard the vessel the American Queen. His knee was fractured, and he was treated over an eight-month period. The plaintiff received Hylagen injections, physical therapy and ultimately underwent knee surgery. He continued to experience pain. The fourth circuit found no abuse of discretion in the trial court's award of $120,000.00.

---

[1] The CPI Inflation Calculator is located at https://www.bls.gov/ data/inflation_calculator. htm.

4

Adjusted for inflation, this award was $162,221.78. Again, in our opinion, the injury sustained by the plaintiff in this case is not as significant as the injury and post-operative complications suffered by Mr. Metoyer.

In *Ben v. Baldwin & Lyons, Inc.*, 17-678 (La.App. 3 Cir. 3/7/18), 241 So.3d 411, the plaintiff suffered a subluxating patella and torn meniscus of the left knee as a result of a vehicle accident. He underwent outpatient arthroscopic surgery to repair the knee. The plaintiff testified that he was less active as a result of the injury and that it continued to be painful. This court affirmed the trial court's general damages award of $195,000.00. Adjusted for inflation, this award was $231,464.24. The surgery performed in this case was outpatient and was performed arthroscopically, which is less invasive than the type of surgery performed on Mr. Metoyer.

In *Jacobs v. City of Marksville*, 06-1386 (La.App. 3 Cir. 3/7/07), 953 So.2d 139, *writ denied*, 07-1093 (La. 9/14/07), 963 So.2d 999, the plaintiff injured his knee in an automobile accident when his knees jammed against the dashboard, and he heard a pop in his right knee. He underwent two surgeries, physical therapy, and injections. His doctor testified that his prognosis was good, but prolonged. The plaintiff still experienced swelling and stiffness, and he was less active due to the accident. This court found that the trial court's award of $225,000.00 was well within its discretion. Adjusted for inflation, this award was $325,508.55. As stated above, the injuries sustained by Mr. Metoyer required immediate and invasive surgery, after which he developed post-surgery complications to his wounds. Mr. Metoyer continues to suffer with grade three post-traumatic arthritis of the knee. As such, we find the injuries sustained by Mr. Metoyer to be more significant than the ones suffered in *Jacobs*.

5

In *Jackson v. Cockerham*, 05-320 (La.App. 4 Cir. 5/10/06), 931 So.2d 1138, *writ denied*, 06-1479 (La. 9/22/06), 937 So.2d 395, a passenger on a bus was injured when the bus was involved in a vehicle accident. The plaintiff had knee pain due to a tear in his meniscus and his anterior cruciate ligament (ACL). He underwent surgery. He was then involved in another vehicle accident and underwent another surgery on his knee. The appellate court found that the second surgery was related to the bus accident based on the record as a whole. The appellate court affirmed the general damages awarded to plaintiff in the amount of $300,000.00. Adjusted for inflation, this award is $438,771.85. We find Mr. Metoyer's injuries to be more significant due to the post-operative complications and because he continues to suffer from arthritis, which may require another surgery.

We note that, while the cases cited involve knee injuries, none of the cases cited by Defendant nor ones found by this court concern the type of injury sustained by Mr. Metoyer nor the type of surgery performed on him. Mr. Metoyer had patellar tendon surgery. This involves opening up the knee and drilling holes into the knee in order to reattach the patellar tendon to the knee. He also suffered complications as a result of the surgery. While the cases cited are similar, we find the particular facts and circumstances of Mr. Metoyer's case to be distinguishable.

The jury awarded Mr. Metoyer $1,200,000.00 in general damages. This amount was reduced to $500,000.00, in accordance with the statutory cap. We do not find that $500,000.00 is substantially greater than the amounts awarded in the cases discussed above. Regardless, after a review of the specific facts of this case, we do not find the jury abused its discretion. Mr. Metoyer underwent surgery to reattach the patellar tendon to the patella in his knee. He then developed post-surgery complications due to blisters that developed at the surgery site. These

complications required him to be treated at the wound care facility at Natchitoches Regional Medical Center on three separate occasions. Treatment included debridement of the wound in order for his wounds to heal. Mr. Metoyer spent several weeks in an immovable brace, and after it was removed, he spent several weeks, multiple times per week, in physical therapy. Mr. Metoyer suffers with grade three post-traumatic arthritis as a result of this incident, which will worsen over his lifetime. Consequently, Mr. Metoyer's activities and quality of life have been limited, as he discussed in his testimony. Further, there is a possibility that Mr. Metoyer may need surgery in the future because of his post-traumatic arthritis.

The fourth circuit court of appeal recently disagreed "with Appellant's position that the application of *Pete*'s holding requires this Court to inextricably anchor current awards to past jurisprudential awards." *Stauder v. Shell Oil Co.*, 22-593, p. 5 (La.App. 4 Cir. 6/3/24), ___So.3d___, ___(2024 WL 2812621). "To find otherwise would usurp the jury's role to determine the amount of damages based on the particularized circumstances presented before that jury." *Id.* Based on the cases discussed, and the particular facts of this case, we do not find that the jury abused its discretion.

## DECREE

The general damages awarded by the trial court is affirmed.

**AFFIRMED.**

7