## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-606

**TIRAS EDWARDS, ET AL.**

**VERSUS**

**GEICO INDEMNITY COMPANY, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
PINEVILLE CITY COURT
PARISH OF RAPIDES, NO. 2012CV00608
HONORABLE J. PHILLIP TERRELL, JR., CITY COURT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## SHANNON J. GREMILLION
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Marc T. Amy, Shannon J. Gremillion, Phyllis M. Keaty, and John E. Conery, Judges.

**CONERY, J.**, concurs in part, dissents in part, and assigns written reasons.

**REVERSED IN PART, AMENDED IN PART, AND RENDERED.**

**Russell L. Potter**
**Stafford, Stewart, & Potter**
**P.O. Box 1711**
**Alexandria, LA 71309**
**(318) 487-4910**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **GEICO Indemnity Company**
    **Patricia Breaux**

**David A. Hughes**
**Hughes Law Firm**
**P. O. Box 1831**
**Alexandria, LA 71309-1831**
**(318) 443-4090**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Shelter Mutual Insurance Company**
    **Sean Mayhair**
    **Helena Theils**

**S. Aaron Siebeneicher**
**Johnson & Siebeneicher**
**P. O. Box 648**
**Alexandria, LA 71309**
**(318) 484-3911**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **State Farm Mutual Automobile Insurance Company**

**Byron O'Neal**
**O'Neal Law Firm**
**630 Lee Street**
**Alexandria, LA 71309**
**(318) 487-8787**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Tiras Edwards**
    **Kevin Wardsworth**

**GREMILLION, Judge.**

Geico Indemnity Company, the insurer of Patricia Breaux (hereinafter referred to as Breaux), appeals the judgment in favor of the plaintiffs for injuries sustained in a motor vehicle accident. For the following reasons, we reverse in part, amend in part, and render.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises out of a February 24, 2012 motor vehicle accident on an exit ramp from I-49 in Alexandria, Louisiana. The accident involved at least three vehicles. In the lead vehicle were plaintiffs, Tiras Edwards and Kevin Wardsworth, followed by a vehicle driven by Sean Mayhair, which was followed by a vehicle driven by defendant-appellant, Breaux.[1] The Mayhair vehicle rear-ended the plaintiffs' vehicle, and the Breaux vehicle rear-ended Mayhair's vehicle. Following a bench trial, the trial court found that "the plaintiffs proved their burden of proof by preponderance of the evidence as to liability." Mayhair and Breaux were each found fifty percent at fault, and the trial court awarded each plaintiff $30,000 in general damages. Geico was cast with $15,000 in general damages for each plaintiff for a total of $30,000. Breaux now appeals.

## ASSIGNMENTS OF ERROR

Breaux assigns as error:

1. The trial court was manifestly erroneous or clearly wrong in finding that Patricia Breaux was fifty percent at fault in causing the accident or impact as to the plaintiffs' vehicle and thus being responsible for or causing fifty percent of the plaintiffs' damages.

2. The trial court was manifestly erroneous in failing to assign any fault to Tiras Edwards for rear-ending the unknown driver and

---

[1] Edwards had an underinsured/uninsured motorist policy in effect with State Farm Mutual Automobile Insurance Company. Mayhair was insured under a Shelter Mutual Insurance Company policy with $15,000 in bodily injury per person coverage and $30,000 per accident coverage. The named insureds of the Shelter policy were Ronald Terrell and Helena Thiels.

stopping suddenly, thus causing Sean Mayhair to impact his vehicle.[2]

3. The trial court was manifestly erroneous in failing to find fault upon the unknown leader driver for stopping suddenly and causing Tiras Edwards to stop suddenly, resulting in the impact by Mayhair and allegedly Patricia Breaux.

4. The trial court was manifestly erroneous in awarding $30,000 in general damages to each plaintiff.

## DISCUSSION

*Testimony*

Officer Sammy Dauzart of the Alexandria Police Department investigated the accident. Officer Dauzart testified that he had no independent recollection of the accident but reviewed his accident report. He stated that Edwards reported that the vehicle in front of him suddenly stopped, which caused him to stop. Mayhair reported that after he rear-ended the Edwards' vehicle, the Breaux vehicle rear-ended him. Both Mayhair and Breaux were ticketed for following too closely. Officer Dauzart testified that Edwards did not report a second impact occurring. The following exchange occurred:

Q. And if I read your report correctly Mr. Edwards only described one impact with his vehicle, that being from the Mayhair vehicle correct?

A. Based on my report it only reflects one impact. Yes, sir.

Officer Dauzart also testified that no injuries were reported at the scene of the accident. He reported the damage to the vehicles as minor/moderate, meaning there was noticeable damage, but all the vehicles were drivable and no wrecker service was needed.

---

[2] Edwards claimed that he stopped suddenly because an unknown vehicle in front of him stopped short.

Dr. Robert Rush is board certified in occupational medicine and treated Edwards and Wardsworth. He first saw Edwards on May 17, 2012, a little over three months after the accident, for lower back and right knee pain. An examination revealed tightness and tenderness in the lumbar and cervical regions. He diagnosed Edwards with facial trauma, cervical strain, and right knee trauma caused by the accident. Dr. Rush prescribed physical therapy and a gel pack to facilitate hot and cold compresses to the affected areas. He prescribed Relafen, an anti-inflammatory, for soreness and inflammation, and Zantaflex, a muscle relaxer to be taken at night for sleep disturbance and muscle spasm.

Dr. Rush saw Edwards on May 31, 2012, June 21, 2012, and July 3, 2012, when Dr. Rush noted resolution of Edwards' shoulder, neck, back and knee problems. Edwards was discharged from Dr. Rush's care at that time and also released from physical therapy.

Dr. Rush also saw Wardsworth on May 17, 2012, for knee and right shoulder pain. Wardsworth had visited the Huey P. Long Medical Center on February 29, 2012, March 17, 2012, and May 4, 2012, for treatment of the injuries he allegedly suffered in this accident. Dr. Rush found that Wardsworth had tenderness in his upper neck area, tightness in the interior chest, and tenderness over the knee caps. He diagnosed Wardsworth with cervical trauma, right upper trauma, and left knee trauma caused by the February accident. Wardsworth was prescribed the same treatment and medicines as Edwards. Dr. Rush saw Wardsworth on June 21, 2012 and July 3, 2012, at which time Wardsworth's issues had resolved and he was released to a home exercise protocol.

On cross-examination, Dr. Rush admitted that Edwards continued to work as a sitter at a home health care business despite his soft-tissue injuries. Further,

Wardsworth continued to work at Wal-Mart at a heavy manual labor job, which Dr. Rush admitted could cause knee, back, and neck pain.

Breaux testified that she was on the way to pick up her child from daycare when the accident occurred. She said that the Mayhair vehicle stopped short and she "tapped" his vehicle. She denied ever seeing Mayhair's brake lights come on, nor did she see any impact between the Mayhair and Edwards vehicles. Breaux testified that she did not hit the Mayhair vehicle hard enough to push it forward and that the Mayhair vehicle had already hit the Edwards vehicle.

Edwards testified that he was stopped at a red light. When the light turned green, he began to move, but then he saw red brake lights and hit his brakes and "all of the sudden it was a pow that come from behind me." When questioned if he felt two hits or one big hit from behind, Edwards stated, "I just felt a bang." Edwards said his knee hit the dashboard, and he poked himself in the eye with his finger, which caused irritation until the following day. Edwards said he visited the Huey P. Long Medical Center on February 26, 2012, because of the pain and the difficulty he was having completing his job duties, which involved assisting a one-hundred pound man who suffered with muscular dystrophy. However, Edwards said he only missed two days of work.

Edwards stated that he followed the medical advice from the Huey P. Long Medical Center staff to use warm compresses and do stretching exercises, but two months later he was still in pain and decided to consult with a lawyer. Edwards was referred to Dr. Rush by his attorney. Edwards, thereafter, visited Dr. Rush on May 17, 2012. Edwards stated to Dr. Rush that he did not have any pain or problems with his eye, back, or right knee prior to this accident. He said he attended eight physical therapy sessions. Although Edwards testified he was fine

4

and "felt good" on his release date of July 3, 2012, he would still occasionally have flare-ups. Edwards said the accident affected his ability to play basketball and lift weights.

On cross-examination, Edwards admitted that he told the investigating officer that a vehicle in front of him suddenly stopped, which caused him to stop short. He again stated that he only felt one impact. On cross-examination, Edwards was presented with medical records indicating complaints of knee pain at various times from 2000 through 2003, and shoulder pain in 2008 and 2010.

Wardsworth testified he was in another motor vehicle accident in November 2011, in which he suffered a broken nose and chest pain from a deployed air bag. However, he denied having knee pain from that accident. He had further returned to work for two months at the time that the February 2012 accident occurred. Wardsworth described the accident as a quick impact that occurred in a split second. Like Edwards, he only felt a single impact. Wardsworth said he hit his left knee and the seatbelt jerked him around. He testified that he thought the pain would go away, but it did not. He went to the Huey P. Long Medical Center on three separate occasions from February to May 2012, complaining of knee pain. Wardsworth was referred to Dr. Rush by his attorney and described a similar course of treatment. He also said he has flare-ups occasionally. Wardsworth said he was very active in sports, including running, track, football, basketball, and lifting weights, which he claimed he is no longer able to do since the accident.

*Liability/Manifest Error*

A court of appeal will not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). If the trial court's findings are reasonable after reviewing the

5

record, we will not reverse the trial court even if we may have decided differently had we been sitting as the trier of fact. *Id.* Further, reasonable credibility evaluations and inferences of fact cannot be manifestly wrong when there are conflicting testimonies. *Id.* "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart v. State, through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993).

The trier of fact's determination of fault apportionment is afforded deference and much discretion. *Soileau v. Smith True Value and Rental*, 11-1594 (La.App. 3 Cir. 1/30/14), 130 So.3d 1060, *writ denied*, 14-435 (La. 4/17/14), 138 So.3d 627. Accordingly, we review fault allocation using the same manifest error/clearly wrong standard of review. *Id.* We have stated:

> [T]he allocation of fault is not an exact science, nor is it the search for a precise ratio. Rather, much like that of quantum assessment, allocation of fault is the finding of an acceptable range and any allocation by the trier of fact within that range cannot violate the manifest error standard or review. When we look to the applicable laws and standard of review, this court is to make a determination of whether any reasonable person could have made the allocation of fault that the jury made under the facts of this case.

*Layssard v. State, Dep't of Pub. Safety & Corrs.*, 07-78, p. 4 (La.App. 3 Cir. 8/8/07), 963 So.2d 1053, 1058, *writ denied*, 07-1821 (La. 11/9/07), 967 So.2d 511.

Pursuant to La.R.S. 32:81(A), "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." A following motorist is presumed negligent in rear-end collisions, although that presumption can be negated. *Brewer v. J.B. Hunt Transp., Inc.*, 09-1408, 09-1428 (La. 3/16/10), 35 So.3d 230.

6

Breaux claims that there was no evidence that her vehicle caused any impact to the vehicle driven by Edwards; thus, the trial court's findings are not reasonable because Breaux was not the cause of any of the plaintiffs' damages. Breaux claims that the plaintiffs failed to prove that her impact of the Mayhair vehicle caused the Mayhair vehicle to hit the plaintiffs' vehicle. We agree.

The trial court manifestly erred in finding Breaux fifty percent at fault when there was no evidence establishing that a second impact with the Edwards vehicle occurred. The trial court did not provide any explanation for its findings that both the Mayhair and Breaux vehicles were at fault in causing the damages to the plaintiffs, and we can find none in the record. The plaintiffs testified that they only felt one impact. Breaux testified that the impact to the Mayhair vehicle was so slight that the Mayhair vehicle suffered no damage. No other evidence or testimony was provided to negate that fact. Simply, the plaintiffs failed to meet their burden of proving that the Breaux vehicle was a cause of their injuries. Accordingly, we reassign one hundred percent of the fault to Mayhair.

*Damages*

Our jurisprudence has consistently held that in the assessment of damages, much discretion is left to the trial court, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion. *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1977). Before we disturb the quantum of an award, the record must clearly reveal that the trial court abused its discretion. *Id.* Based on our review of the facts surrounding the damages suffered by the plaintiffs in this case, we find that the trial court abused its discretion in in awarding $30,000 to each plaintiff. Because we have found that the trial court abused its discretion, we will lower the award to the highest amount that was reasonably within the

discretion of the trial court. *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70.

> Prior awards under similar circumstances serve only as a general guide. If the appellate court determines that an abuse of discretion has been committed, it is then appropriate to resort to a review or prior awards, to determine the appropriate modification of the award. In such review, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries.

*Theriot v. Allstate Ins. Co.*, 625 So.2d 1337, 1340 (La. 1993).

In *Clayton v. Republic Vanguard Insurance Co.*, 05-1615 (La.App. 3 Cir. 5/3/06), 929 So.2d 811, the plaintiff suffered soft-tissue injuries following a motor vehicle accident and underwent physical therapy eleven times between November 2003 and January 2004. We found that the trial court abused its discretion in awarding the plaintiff $22,500 in general damages and reduced the award to $15,000 for the soft-tissue injuries that had mostly resolved in about two months.

In *Lucas v. Bellsouth Telecommunications, Inc.*, 09-90 (La.App. 3 Cir. 5/6/09), 10 So.3d 887, the elderly plaintiff completed twelve sessions of physical therapy over a six-week period for muscle spasms in her neck caused by a motor vehicle accident. We affirmed an award of $17,500 in general damages.

In *Menard v. Audubon Insurance Group*, 06-1192 (La.App. 3 Cir. 3/14/07), 953 So.2d 187, an award of $20,000 in general damages was affirmed for a woman suffering from neck, back, and knee pain following a motor vehicle accident. The plaintiff was treated with physical therapy for six weeks but then resumed treatment with an orthopedist and was eventually discharged to a home exercise plan.

In *Lebato v. Safeway Insurance Co.*, 03-131 (La.App. 3 Cir. 6/4/03), 852 So.2d 446, an elderly woman who was injured in a motor vehicle accident was

treated conservatively for two months and given home exercises to do upon her release. She still experienced occasional flare-ups. We affirmed an award of $21,500 in general damages.

On the contrary, awards in the $30,000 range are reserved for treatment of longer duration and injuries that significantly affect quality of life. In *Waters v. Brookshire Grocery* Co., 07-203 (La.App. 3 Cir. 11/7/07), 969 So.2d 1287, an elderly woman was treated for soft-tissue injuries to her knee, back, and neck for ten months and had residual pain two-and-a-half years later at trial. We affirmed an award of $30,000 in general damages.

On appeal, the trial court's awards were raised for a husband and wife to $30,000 and $25,000 respectively, for neck, shoulder, and back pain following a motor vehicle accident. Both the husband and wife were treated with injections and medication and had over twenty visits to the doctor over approximately two years. *See Cole v. Allstate Ins. Co.,* 07-1046 (La.App. 3 Cir. 6/5/08), 987 So.2d 310, *writ denied*, 08-1463 (La. 10/31/08), 994 So.2d 535.

In *Jacobs. v. City of Marksville*, 06-1386 (La.App. 3 Cir. 3/7/07), 953 So.2d 139, *writ denied*, 07-1093 (La. 9/14/07), 963 So.2d 999, a man suffered bilateral arm and leg pain, lower-back pain, and neck pain caused by a motor vehicle accident. He was treated for ten months for his back and neck spasms and had an injection. His general damage award of $35,000 was affirmed on appeal.

Both plaintiffs began treatment with Dr. Rush on May 17, 2012, and concluded treatment on July 3, 2012. Their two-month-long treatment of physical therapy, ice packs, and medication while continuing to work in physically strenuous jobs indicate that the maximum award for five-month long soft tissue injuries of the nature suffered by both of these plaintiffs is $15,000. Additionally,

the maximum award for any residual pain and suffering endured from discharge from Dr. Rush's care until the time of trial (July 2012 through May 2013) is $7,500. Accordingly, both plaintiffs' awards are reduced from $30,000 to $22,500. Thus, defendants, Sean Mayhair and Shelter Mutual Insurance Company are liable to each plaintiff for its policy limits of $15,000. State Farm Mutual Automobile Insurance is cast with the excess of $7,500 per plaintiff.

Geico's assignments of error numbered two and three are rendered moot by our findings and, therefore, we need not address them.

## CONCLUSION

The judgment of the trial court casting Patricia Breaux and her insurer, Geico Indemnity Insurance Company, with fifty percent of the fault is reversed. The judgment is amended to assess Sean Mayhair with one hundred percent of the fault. The judgment is further amended to reduce the general damage award to each plaintiff from $30,000 to $22,500. All costs of this appeal are assessed to the plaintiff-appellees, Tiras Edwards and Kevin Wardsworth.

**REVERSED IN PART, AMENDED IN PART, AND RENDERED**.

10

TIRAS EDWARDS, ET AL.

V.

GEICO INDEMNITY COMPANY, ET AL.

**CONERY, J., concurs in part and dissents in part.**

I concur in the majority's decision to reverse the judgment against GEICO Indemnity Company and its insured, Patricia Breaux. I dissent as to the amount of general monetary damages for each plaintiff set by the majority.

Edwards and Wardsworth are brothers. They were rear ended but neither reported any injuries at the scene of this relatively minor automobile collision. The accident happened on February 24, 2012. Edwards reported to the E.R. two days after the accident on February 26, 2012, and Wardsworth three days later on February 29, 2012. Neither was diagnosed with a serious injury and almost no objective findings were noted. Edwards complained of back pain and Wardsworth neck and knee pain. Both were treated and released. Wardsworth went to the E.R. for three follow up visits. Edwards did not. Both men hired the same attorney, who referred them to a doctor on May 17, 2012, some three months after the accident.

According to counsel for defendant-appellant GEICO, the doctor is reputed to be well-known to the local courts as sympathetic to plaintiffs.[1] The doctor prescribed an identical treatment regimen to Edwards and Wardsworth. Further, the doctor prescribed a gel patch for Edwards and pain pills and physical therapy for each. The doctor referred them to the same therapist on approximately the same dates and each was treated for about eight visits. At best, the medical evidence showed each plaintiff had a three to five month soft tissue injury that resolved completely. Both were discharged from therapy and the doctor on July 3, 2012, with no further objective findings and no complaints. Both men were impeached at trial based on past injuries they had previously denied.

As to liability, the majority correctly found that the only party at fault was the first and only vehicle to strike Edwards and Wardsworth, driven by Sean Mayhair and insured by Shelter Mutual. Both men admitted to the police officer at the scene and at trial feeling only one impact. The trial judge nevertheless found Mayhair and Breaux both at fault, but had no factual findings or analysis whatsoever to support his ruling. The majority voted to reverse the fault finding against Breaux and GEICO as manifestly erroneous, and I agree.

On the issue of damage, there was no analysis of the evidence or reasons for the trial judge's general damage award either. In its reasons for ruling, the trial judge apparently set the general damage award based on the amount of insurance coverage available, $15,000.00 for each policy per person or $30,000.00 per accident each for Edwards and Wardsworth under the combined Breaux and

---

[1] However, no objection was lodged by defendants as to doctor's qualifications and no evidence of any alleged bias was introduced. The defendants did not seek an IME or call any physicians to testify.

Mayhair policies. There was no discussion by the trial judge as to the nature and extent of their injuries or what the justification or rationale for his quantum awards may have been.

Moreover, in the actual judgment signed by the trial court, the trial judge did not cast each individual defendant and their insurers in solido for $30,000.00 each in general damages. Instead, the actual judgment cast Mayhair and Shelter Mutual for $15,000.00 each to Edwards and Wardsworth, the amount of Shelter Mutual's policy limits, and $15,000.00 each to Edwards and Wardsworth against Patricia Breaux and GEICO, the amount of GEICO's policy limits. The actual judgment further ordered Sean Mayhair and State Farm Mutual Automobile Insurance Company, Edwards under insurance motor carrier, to pay to Tiras Edwards One Thousand Five Hundred Three Dollars and 27/100 ($1,503.27), jointly and in solido. This sum represents one-half of Edward's proven medical specials, with the other half being cast jointly to State Farm and Patricia Breaux.

Likewise, the trial court awarded judgment in favor of Kevin Wardsworth for $15,000.00 in general damages as against Mayhair and Shelter Mutual in solido, and $1,963.30 against Mayhair and State Farm, Edwards U.M. carrier. Therefore the only judgments left standing are the judgments against Sean Mayhair and Shelter Mutual in the amount of $15,000.00 each to Edwards and Wardsworth and the judgments against Mayhair and State Farm in the amount of $1,503.27 to Edwards and $1,963.30 to Wardsworth. Using the manifest error standard, the majority then found that the $30,000.00 general damages to each plaintiff mentioned in the trial judge's reasons for ruling was too high, and purported to reduce the general damages to $22,500.00 each.

The majority, incorrectly in my view, actually increased the judgment as

against Mayhair and Shelter Mutual to $22,500.00 for each plaintiff, thus in actuality, <u>adding</u> $7,500.00 to each general damage award as against Mayhair. Since Shelter Mutual's policy limits are only $15,000.00 per person, the net effect of the judgment is to <u>increase</u> the awards against Mayhair and State Farm, Edwards U.M. carrier, by $7,500.00 each. No mention is made in the majority opinion of the original trial court award in favor of Edwards and Wardsworth against Mayhair and State Farm for the medical expenses of $1,503.27 and $1,963.30, respectively.

The written reasons and the actual judgment in this case are clearly inconsistent. While it may be true that the trial court may have intended to award $30,000.00 in general damages each to Edwards and Wardsworth in his reasons for ruling, it is the actual judgment and not the reasons that control, as "appellate courts review judgments, not reasons for judgment." *Winberry v. Louisiana College*, 13-339, p. 9 (La.App. 3 Cir. 11/6/13), 124 So.3d 1212, 1218, *writs denied*, 13-2844 (La. 4/11/14), 137 So.3d 1215 and 13-2859 (La. 4/11/14), 137 So.3d 1215. The actual judgment is controlling and that is what we must consider on appeal. Edwards and Wardsworth did not appeal or answer the appeal as to the judgments against Mayhair, Shelter Mutual and State Farm.

It is well-established in this circuit that when parties do not appeal or answer the appeal, we cannot increase the damages award. *See* La.Code Civ.P. art. 2133; *Lamartinere v. Boise Cascade Corp.*, 14-1195 (La. 10/24/14), 149 So.3d 1234; *Matthews v. Consolidated Co., Inc.*, 9501925 (La. 12/8/95), 664 So.2d 1191; *Smith v. Municipality of Ferriday*, 05-755 (La.App. 3 Cir. 2/1/06), 922 So.2d 1222, *writ denied*, 06-0934 (La. 9/29/06), 937 So.2d 860; *Bolzoni v. Theriot*, 95-1233 (La.App. 3 Cir. 3/6/96), 670 So.2d 783, *writ denied*, 96-718 (La. 4/26/96), 672 So.2d 908 (citing *Mai v. Blair*, 634 So.2d 1202 (La.App. 3 Cir.1993); *David v.*

*David*, 14-657 (La.App. 3 Cir. 12/23/14), ___ So.3d ___.

Thus, I am of the opinion that we cannot increase the quantum award from that rendered in the trial court's judgments against Mayhair and Shelter Mutual or Mayhair and State Farm.

We can and should, however, reduce the award against Mayhair and Shelter Mutual under the manifest error rule. Mayhair and Shelter Mutual did assign as specific error the trial court's $15,000.00 judgments to Edwards and Wardsworth, respectively, against them. As previously indicated, the trial judge made no factual findings as to the nature and extent of the injuries allegedly suffered by Edwards and Wardsworth, and no analysis of the medical evidence. Since he apparently set the general damage award based on insurance policy limits, we are unable to accord deference to such a ruling.

Likewise, as indicated, the minor impact collision caused only relatively minor injuries to these two brothers, both of whom were impeached at trial after denying previous injuries. I would reduce the general damage award to $7,500.00 each to Edwards and Wardsworth, plus medical bills awarded in the original judgment, the highest award supported by the evidence in this case, in my opinion. *See Lewis v. Progressive Paloverde Ins. Co.,* 13-617 (La.App. 3 Cir. 11/6/13), 125 So.3d 581 (general damage award amended to reduce from $15,000.00 to $7,500.00); *Johnson v. State Farm Ins. Co.*, 09-667 (La.App. 3 Cir. 12/9/09), 27 So.3d 307 (general damage award amended to reduce from $5,000.00 to $2,000.00); *Burrell v. Williams*, 05-1625 (La.App. 1 Cir. 6/9/06), 938 So.2d 694 (general damage award of $10,000.00 not an abuse of discretion); *Williams v. Roberts*, 05-852 (La.App. 5 Cir. 4/11/06), 930 So.2d 121 (general damage award amended to reduce from $14,000.00 to $7,500); *Alexander v. Dominick*, 533 So.2d

77 (La.App. 3. Cir. 1989) (general damage award amended to reduce from $14,900.00 to $7,500.00), *writ denied*, 533 So.2d 1218 (La.1989).

According to the evidence, the special damages for medical bills amount to $3,006.54 for Edwards and $3,938.59 for Wardsworth. The only judgment left standing on the issue of medical specials is the judgment against Mayhair and State Farm in the amount of $1,503.27 to Edwards and $1,963.30 to Wardsworth. Adding the $7,500.00 general damage award to each, I would award a total of $9,003.27 to Tiras Edwards and a total of $9,463.30 to Kevin Wardsworth against Mayhair and Shelter Mutual. The judgment against Mayhair and State Farm for $1,503.27 to Edwards and $1,963.30 to Wardsworth should, therefore, be reversed, as the Shelter Mutual policy limits are sufficient to pay the entire judgments.

I would award legal interest plus all trial court costs against Mayhair and Shelter Mutual and I would assess all costs on appeal to Tiras Edwards and Kevin Wardsworth equally.