NOT FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 15-416

JOSHUA THOMPSON

VERSUS

BOYCE G. CAGLE, ET AL.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 245,430
HONORABLE WILLIAM GREGORY BEARD, DISTRICT JUDGE

**********

**DAVID KENT SAVOIE**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and David Kent Savoie, Judges.

**AFFIRMED.**

**Andrew P. Texada**
**Stafford, Stewart & Potter**
**P. O. Box 1711**
**Alexandria, LA 71309**
**(318) 487-4910**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Boyce G. Cagle**
     **Dove Digital Services, Inc.**
     **State Farm Mutual Automobile Ins. Co.**


**L. Lyle Parker**
**Christina S. Slay**
**Bernetta Y. Bryant**
**Bolen, Parker, Brenner, Lee & Englesman, Ltd.**
**A Professional Law Corporation**
**P. O. Box 11590**
**Alexandria, LA 71315-1590**
**(318) 445-8236**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Joshua Thompson**

**SAVOIE, Judge.**

This matter involves the Plaintiff-motorist's appeal of the jury's finding of zero liability on the part of the Defendant-motorist involved in an automobile accident with the Plaintiff, as well as the trial court's order prohibiting the Plaintiff from presenting evidence of a related traffic citation issued to the Defendant, and prohibiting the investigating officer from providing opinion testimony as to fault. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The subject car accident took place at approximately 8:00 p.m. on September 7, 2011, at the intersection of U.S. Highway 71 (MacArthur Drive), and Sterkx Road in Alexandria, Louisiana. Plaintiff Joshua Thompson was driving his mother's 2008 Hyundai Sonata southbound on Hwy. 71, and he intended to turn left at the intersection onto Sterkx Road. According to Mr. Thompson, as he entered into the left turn lane, he came to a stop because the traffic light controlling the intersection was red. The light then turned to green, and he proceeded to turn left. Mr. Thompson testified that he did not recall whether the light was a green turn arrow, or a green circle, but that he made sure he could safely proceed through the intersection before turning.

Meanwhile, Defendant Boyce Cagle was driving a 2006 GMC Sierra northbound on Hwy. 71 in the outside lane closest to the shoulder of the highway. He testified that, as he approached the intersection of Hwy. 71 and Sterkx Road traveling the posted speed limit of fifty miles per hour, he saw the light turn from green to yellow. According to Mr. Cagle, he did not have time to stop when the light turned yellow, so he continued into the intersection. He testified that the light remained yellow when he entered into the intersection.

Officer Jerrod King investigated the scene of the accident, but did not witness the accident. He testified that, based on the location of the damage of vehicles, he determined that Mr. Thompson's and Mr. Cagle's vehicles collided in the intersection in Mr. Cagle's lane of travel. Both Mr. Thompson and Mr. Cagle testified that neither saw the other's vehicle prior to impact.

Mr. Thompson alleges he sustained injuries to his right hand and right knee, and more serious injuries to his left shoulder that required multiple surgeries.

On September 5, 2012, Mr. Thompson filed suit against Mr. Cagle, State Farm Mutual Automobile Insurance Agency, and Dove Digital Services, Inc., Mr. Cagle's alleged employer at the time of the accident. The Defendants submitted an answer denying liability and asserting affirmative defenses.

On December 1, 2014, Defendants submitted a Motion in Limine seeking to exclude evidence concerning a traffic citation issued to Mr. Cagle in connection with the subject accident. The motion was heard on February 2, 2015, the day before trial, and was granted.

On February 3, 2015, prior to the start of trial and outside of the jury's presence, counsel raised the issue of admissibility of Officer's King's opinion testimony concerning fault in the accident. The trial court ruled that the investigating officer was precluded from testifying regarding who was at fault in the accident, and further stated "[h]e can only testify with regards to what his investigation at the scene was, but not the conclusion of the accident."

Following a three day trial, a jury ultimately concluded that Mr. Cagle was neither entirely, nor partially, negligent in causing the accident. The trial judge signed a written judgment dismissing Plaintiff's claims against the Defendants on February 23, 2015.

On March 4, 2015, Mr. Thompson presented an *ex parte* motion to the trial court seeking to supplement the record in connection with the hearing on Defendants' motion in limine with the deposition of the Officer King. The trial judge signed an order granting the motion on the same day.

Mr. Thompson has appealed the judgment, contending that the trial court erred in excluding evidence of the citation issued to Mr. Cagle as well as the investigating officer's opinion testimony regarding fault in the accident. In addition, Mr. Thompson argues on appeal that the jury was manifestly erroneous in finding no fault or negligence on the part of Mr. Cagle.

## ANALYSIS

**Admissibility of Evidence of Traffic Citation:**

In his first assignment of error, Mr. Thompson argues that the trial court erred in granting Defendants' Motion in Limine and excluding evidence of a traffic citation issued to Mr. Cagle by the investigating officer.

We review a trial court's ruling on a motion in limine for abuse of discretion. *Noel v. Noel*, 15-37 (La.App. 3 Cir. 5/27/15), 165 So.3d 401, *writ denied*, 15-1121 (La. 9/18/15), _ So.3d _ . As we recognized in *Johnson v. Smith*, 11-853, p. 10 (La.App. 3 Cir. 3/14/12), 86 So.3d 874, 881-82:

> It has long been held that the mere charge of a traffic violation is inadmissible in a civil proceeding to prove negligence because citations are often untrustworthy; they are merely the opinion of the officer; their payment is often the result of expediency or compromise; and they erode the rule against hearsay. *See Ruthardt v. Tennant*, 215 So.2d 805, 252 La. 1041 (La.1968). This is particularly true where there is no court appearance and no written plea of guilty. *See Maricle v. Liberty Mut. Ins. Co.*, 04–1149 (La.App. 3 Cir. 3/2/05), 898 So.2d 565.

In *Maricle v. Liberty Mut. Ins. Co.*, 04-1149 (La.App. 3 Cir. 3/2/05), 898 So.2d 565, we held that mere payment of a traffic citation without a corresponding

written plea of guilty in accordance with La.R.S. 32:641 does not constitute a guilty plea to a traffic offense and does not render evidence of a traffic citation admissible.

Mr. Thompson attempts to distinguish these cases based on Mr. Cagle's payment of the citation over the phone via credit card. However, there is no indication in La.R.S. 32:641 that voluntary payment of a traffic citation over the phone equates to an admission of guilt. Therefore, the trial court correctly excluded evidence of the traffic citation.

**Exclusion of Officer's Opinion Testimony Regarding Fault:**

Mr. Thompson also asserts that the trial court erred in precluding Officer King, the investigating officer, from offering opinion testimony concerning who was at fault in causing the accident, either as an expert witness under La.Code Evid. art. 702, or as a lay witness under La.Code Evid. art. 701.

However, Officer King's excluded testimony was not proffered in accordance with La.Code. Civ.P. art. 1636, which states in pertinent part:

> A. When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence.
>
> B. At the request of any party, the court may allow any excluded evidence to be offered, subject to cross-examination: on the record during a recess or such other time as the court shall designate; or by deposition taken before a person authorized by Article 1434 within thirty days subsequent to the exclusion of any such evidence or the completion of the trial or hearing, whichever is later. When the record is completed during a recess or other designated time, or by deposition, there will be no necessity for the requesting party to make a statement setting forth the nature of the evidence.

4

In *Whitehead v. Kansas City Southern Railway Company*, 99-896, p. 11 (La.App. 3 Cir. 12/22/99), 758 So.2d 211, 218-219, *writ denied*, 00-209 (La. 4/7/00), 759 So.2d 767, a panel of this court stated:

> A party need not make a formal objection at the time a trial court rules on the admissibility of the evidence, but need only make known the action he desires of the court and his grounds therefor. La.Code Civ.P. art. 1635. After ruling evidence inadmissible, the trial court shall permit the party seeking its introduction to proffer the evidence or make a statement as to the nature of the evidence. La.Code Civ.P. art. 1636. The trial court's rulings on the admissibility of evidence are reviewable on appeal without the necessity of further formality. *Id.* However, if a party fails to proffer excluded evidence, an appellate court cannot analyze it and its admissibility, and that party is precluded from complaining of the excluded testimony. *Broussard v. Olin Corp.*, 546 So.2d 1301 (La.App. 3 Cir.1989).

On appeal, Mr. Thompson refers to Officer King's discovery deposition taken prior to trial in support of his argument. However, counsel never sought to introduce Officer King's deposition into evidence, it was not accepted into evidence, and it was not considered by the trial court in connection with its ruling on the admissibility of Officer King's testimony. Therefore we cannot consider it on appeal.

The fact that Mr. Thompson filed Officer King's deposition into the record pursuant to an *ex parte* motion nearly a month after the conclusion of trial, and after a final judgment had been signed, does not render the deposition properly admitted into evidence. *See Greenfield v. Lykes Bros. S.S. Co.*, p. 7, 02-1377 (La.App. 1 Cir. 5/9/03), 848 So.2d 30, 33, where the court held that documents filed into the record one month after trial were not reviewable because "the documents were never properly offered, introduced, or admitted into evidence. Accordingly, neither the trial court nor the appellate court can consider these documents."

5

Moreover, Officer King's discovery deposition filed via an *ex parte* motion to supplement the record cannot be considered as Officer King's proffered testimony. Counsel did not request during trial to proffer the excluded testimony via a discovery deposition taken prior to trial, and discovery deposition testimony is not specifically contemplated by La.Code Civ.P. art. 1636(B) as a means to submit excluded testimony for consideration on appeal. In addition, "[w]e are aware of no principle that would require the trial court to allow a proffer after judgment is rendered in a case." *R & B Falcon Drilling USA, Inc. v. Lafourche Parish School Board*, 06-64, p. 7 (La.App. 1 Cir. 11/3/06), 950 So.2d 696, 701.

Because there was no proffer of Officer King's excluded testimony, the trial court's exclusion of his testimony is not properly before us for review.

**Allocation of Fault**:

Mr. Thompson also asserts that the jury was manifestly erroneous in failing to allocate Mr. Cagle with any percentage of fault.

> A court of appeal will not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). If the trial court's findings are reasonable after reviewing the record, we will not reverse the trial court even if we may have decided differently had we been sitting as the trier of fact. *Id*. Further, reasonable credibility evaluations and inferences of fact cannot be manifestly wrong when there are conflicting testimonies. *Id*. "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart v. State, through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993).

> The trier of fact's determination of fault apportionment is afforded deference and much discretion. *Soileau v. Smith True Value and Rental*, 11–1594 (La.App. 3 Cir. 1/30/14), 130 So.3d 1060, *writ denied*, 14–435 (La. 4/17/14), 138 So.3d 627. Accordingly, we review fault allocation using the same manifest error/clearly wrong standard of review. *Id*.

6

*Edwards v. Geico Indem. Co.*, 14-606, pp. 5-6, (La.App. 3 Cir. 3/18/15), 167 So.3d 957, 961-962. "[A]llocation of fault is the finding of an acceptable range and any allocation by the trier of fact within that range cannot violate the manifest error standard of review." *Id.* at 962.

The duty of a left-turning motorist at an intersection was discussed in *Baker v. State Farm Mutual Auto Insurance Company*, 49,468, pp. 5-7 (La.App. 2 Cir. 1/21/15), 162 So.3d 405, 409-410 (citations omitted):

> The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard. La.R.S. 32:122. No person shall . . . otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. La.R.S. 32:104(A). Judicial interpretations of La.R.S. 32:104(A) have made it clear that a left-turning motorist has a strong duty of care.
>
> Before attempting a left turn, a motorist should ascertain whether it can be completed safely. This duty includes . . . keeping a proper lookout for both oncoming and overtaking traffic in order to ascertain that the left turn can be made with reasonable safety.
>
> Because a left turn is one of the most dangerous maneuvers for a driver to execute, there is a presumption of negligence on a left-turning motorist involved in a motor vehicle accident . . . when the other party can prove that the turning motorist executed a left hand turn and crossed the center line at the time of impact. In a vehicular collision case, the [oncoming driver] may take advantage of a presumption of the [left-turning motorist's] negligence when the [oncoming driver] proves that the [left-turning motorist] executed a left hand turn and crossed the center line at the time of the impact. The burden rests heavily on the motorist who desires to make a left hand turn to explain how the accident occurred and to show that he or she is free from negligence.
>
> Likewise, jurisprudence has established that an oncoming driver has a right to assume that the left-turning motorist will obey the law in allowing [him] to continue in [his] proper lane of travel and will yield to [his] right-of-way.
>
> . . . [N]otwithstanding the presumption of negligence attributed to a left-turning driver, a favored motorist can still be assessed with

comparative fault if [his] substandard conduct contributed to the cause of the accident.

In addition, La.R.S. 32:232 in pertinent part provides the following with respect to left turning motorists and motorists proceeding straight through an intersection controlled by a traffic signal:

(1) GREEN indication:

(a) Vehicular traffic facing a circular green signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But vehicular traffic, including vehicles turning right or left, shall stop and yield the right-of-way to other vehicles . . . lawfully within the intersection . . . at the time such signal is exhibited.

(b) Vehicular traffic facing a green arrow signal, shown alone or in combination with another indication, may cautiously enter the intersection only to make the movement indicated by such arrow, or such other movement as is permitted by other indications shown at the same time. Such vehicular traffic shall stop and yield the right-of-way . . . to other traffic lawfully using the intersection.

. . . .

(2) Steady YELLOW indication:

(a) Vehicular traffic facing a steady yellow signal alone is thereby warned that the related green signal is being terminated or that a red signal will be exhibited immediately thereafter and such vehicular traffic shall not enter the intersection when the red signal is exhibited.

A driver who is faced with a traffic light that changes to yellow as he approaches an intersection should not enter into the intersection if, by reasonable diligence, he can avoid doing so. *Dale v. Carrol*, 509 So.2d 770 (La.App. 2 Cir. 1987). "[I]f a driver is in the process of entering the intersection as the light changes to yellow, he has preempted the intersection and is committed to move on in order to clear the passage for traffic traveling perpendicular to him." *Id.* at 776. *See also, McMullan v. Travelers Ins. Co.*, 311 So.2d 902 (La.App. 2 Cir. 1975),

8

*writ denied*, 313 So.2d 840 (La. 1975), *and Cumis Ins. Soc. Inc. v. Christidis*, 418 So.2d 730 (La.App. 4 Cir. 1982).

A favored motorist travelling through an intersection controlled by a traffic signal is not obligated to look to his left or right before entering the intersection, but must maintain general observation of a controlled intersection. The favored motorist will be held accountable for an accident only if he could have avoided the accident with the exercise of the slightest degree of care and fails to do so. *Bernard v. City of Lafayette*, 98-1815 (La.App. 3 Cir. 5/5/99), 735 So.2d 804.

At trial, the only evidence presented as to how the accident happened was the testimony of Mr. Thompson, Mr. Cagle, and Officer King, as well as photographs of the damage to the parties' vehicles.

Mr. Thompson testified that he was eighteen years old at the time of the accident, and that he had obtained his drivers' license approximately three months prior to the accident. He testified that prior to the accident, he was stopped in the turn lane at the intersection of Hwy. 71 and Sterkx Road because the traffic signal was red, and that when the light turned green, he proceeded to turn left into the intersection.

Mr. Thompson admitted that he did not know whether he had a circular green light or a green turn arrow. He testified that he understood a green circular light meant "to go" and that a green turn arrow meant "to turn," and that he did not know whether or not a green circular light meant that he would be protected from oncoming traffic as he proceeded to turn left. He also testified that he understood that when he made a left turn, he was required to make sure the way was clear, and that he did so.

Mr. Thompson also testified that it was dark at the time of the accident, and that prior to turning, he could see the headlights of the northbound vehicles travelling in the same direction as Mr. Cagle approaching the intersection, but that he could not pinpoint Mr. Cagle's truck specifically. According to Mr. Thompson, even though he could see the headlights of the oncoming vehicles, he determined it was safe to turn left because he could see the red brake lights of the oncoming vehicles illuminate, which suggested to Mr. Thompson they were coming to a stop.

Mr. Cagle testified that as he was approaching the intersection of Hwy. 71 and Sterkx Road travelling northbound in the outside lane, the light was green. He stated:

> As soon as I noticed it had turned to yellow so didn't feel that I had the time to actually just slam on my brakes. So I just proceeded through. I believe the only other thing that I did see was a vehicle that was on Sterkx Road at the red light there.

Mr. Cagle further testified that the light was yellow when he entered the intersection. According to Mr. Cagle, he rarely ever drives faster than the speed limit, and he assumed he was travelling the speed limit of fifty miles per hour through the intersection. Mr. Cagle also indicated that as he approached the intersection, he had a clear line of sight. He admitted that he did not see Mr. Thompson's vehicle at all until after impact, and therefore he did not swerve or apply his brakes in an effort to avoid the accident.

In addition, evidence was presented at trial that indicated that Mr. Cagle's truck sustained damage to the front quarter panel, and that Mr. Thompson's car sustained damage to the passenger side rear quarter panel. Officer King testified that, based on the damage to the vehicles, he determined that the impact occurred in the intersection in Mr. Cagle's lane of travel, and that Mr. Thompson's vehicle

had almost cleared Mr. Cagle's lane prior to impact. He further indicated that neither driver appeared to be impaired by drugs or alcohol.

Based on the above evidence and testimony, the record reasonably supports a finding that Mr. Cagle legally entered the intersection just as it turned to yellow, while Mr. Thompson had turned left into the intersection when he had a green circular light. Accordingly, Mr. Cagle was the favored driver traveling through the intersection and is afforded the benefit of presumption of Mr. Thompson's negligence. Therefore, for Mr. Cagle to be allocated any percentage of fault, it was *Mr. Thompson's* burden to prove that Mr. Cagle could have, but failed to, avoid the accident with the exercise of the slightest degree of care. *Bernard,* 735 So.2d 804.

Mr. Thompson argues that the jury was required to allocate some percentage of fault to Mr. Cagle because Mr. Cagle admitted that he did not see Mr. Thompson's vehicle until after impact. However, it was dark at the time of the accident, Mr. Cagle was legally traveling through the intersection at fifty miles per hour, and there is no evidence in the record that requires a finding that, under the circumstances, Mr. Cagle should have been able to see Mr. Thompson prior to impact, or that he could have taken steps to avoid the accident but failed to do so. The jury's finding that Mr. Cagle was not negligent is reasonably supported by record.

## CONCLUSION

For the reasons set forth above, we affirm the judgment in favor of the Defendants dismissing Plaintiff-Appellant Joshua Thompson's claims with prejudice. Costs of the appeal are assigned to Appellant.

**AFFIRMED.**

11

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2–16.3.